STATE BOARD OF TAX APPEALS.

COMMERCIAL CASUALTY INSURANCE COMPANY, PETITIONER, v. CITY OF NEWARK, RESPONDENT.

Decided April 2, 1940.

For the petitioner, *Lum, Tamblyn & Fairlie* (by *John M. Leavens* and *Ernest C. Lum*).

For the respondent, *James F. X. O'Brien* (by *Raymond Schroeder*).

QUINN, President. Petitioner, a stock insurance company, was assessed for taxation for the year 1938 by the respondent taxing district, under the provisions of *Pamph. L.* 1818, *ch.* 236, § 307, in the sum of $1,209,029. Its appeal to the Essex County Board of Taxation, praying for a reduction of the assessment, was denied. The assessing formula set out in section 307 calls for a levy upon capital stock paid in and accumulated surplus, and is stated in the case of *Fidelity Trust Co.* v. *Board of Equalization of Taxes (Supreme Court,* 1908), 77 *N. J. L.* 128, 130; 71 *Atl. Rep.* 61, as follows:

"In order to ascertain the capital and surplus it is necessary to find the true value of the gross assets. From this must be deducted debts and liabilities, the remainder will be the

value of the capital and surplus, if any. This remainder for the purposes of taxation is to be still further reduced by the assessment of the real estate and non-taxable securities of the company * * *. This method of assessment * * * presupposes that the values used to this end are true values within the constitutional meaning."

The controversy presented in these proceedings concerns the determination of the first factor in the formula quoted, i. e., "the true value of the gross assets." The parties are in agreement as to the valuations for fixed debts and liabilities, assessments upon real estate, and exempt and non-taxable property, in the aggregate amount of $8,077,126.95. They likewise concur as to the true value of these items on the asset side of the ledger: real estate, mortgage loans, stocks and bonds, cash, bank balance, and accrued interest, in the total agreed sum of $7,631,195.11.

In addition to the figure for assets last stated, petitioner's books show additional items in its asset column of $1,613,540.03, which total, however, it is urged by petitioner, is in excess of the true value of the items designated, and, to some extent, is not reflective of assets at all. Since a lawful assessment against petitioner must be founded upon the *true value* of the gross assets, it is incumbent upon us to examine carefully into petitioner's contentions, being duly mindful, withal, of our right to accept book figures of value, in the absence of other sound evidence as to true value. *Second National Bank, Red Bank* v. *State Board of Tax Appeals* (*Supreme Court,* 1935), 114 *N. J. L.* 573; 178 *Atl. Rep.* 96; and see *General Motors Corp.* v. *State Board of Tax Appeals* (*Supreme Court, Feb.* 23d, 1940), 124 *N. J. L.* 212; 11 *Atl. Rep.* (*2d*) 314.

As the matter was restated by the court in *Universal Insurance Co.* v. *State Board of Tax Appeals* (*Supreme Court,* 1937), 118 *N. J. L.* 538 (at *p.* 540); 193 *Atl. Rep.* 915:

"In determining true value, at a time of depression when market prices were of no service, it [the court] held that while county boards were not bound by bank figures (*Newton Trust Co.* v. *Atwood,* 77 *N. J. L.* 141; they must base their determination upon all the evidence) they were not

obliged to rewrite them, and that since the bank made its own statement as to the value of its assets it could not, under the circumstances of that case, be heard to complain when those figures were accepted by local and state boards. *Second National Bank* v. *State Board, 114 N. J. L. 573."* And cases therein cited.

And (at *p.* 541) :

"There is no hard and fixed rule and force that is to be given by those charged with the duty of determining true value to each and every factor pertinent and ascertainable in a given case."

With these principles in mind we proceed to an analysis of those items which petitioner maintains are either valueless or have a true value less than that nominally set up on the books.

1. *Agents' Commissions due, payable and deductible from outstanding premiums receivable—$237,961.44.*

It was shown that within the $1,613,540.03 total are included gross premiums receivable, and that the figure now under consideration represents the estimated proportion of such receivables which will be deducted by company agents as commissions earned, when they remit premiums collected by them. It appears clear that this item must be deducted in order to avoid a swelling of the receivables beyond their true value to petitioner. A similar item was deducted by this board as a liability in determining the capital and surplus of an insurance company, in *Fidelity Union Title and Mortgage Guaranty Co.* v. *City of Newark (State Board)*, filed December 8th, 1936.

2. *Agent's commissions due, payable and deductible from outstanding overdue premiums receivable—$50,500.00.*

This item is in the same category as that first considered, except that it applies to commissions earned and payable to agents on premium balances overdue more than ninety days, the ratio being twenty-five per cent., or $50,500 in commissions, against $202,000 in balances. This deduction is likewise necessary in the determination of the true value of the premiums receivable.

Reference is next had to a number of items designated as "non-admitted" assets, not allowable for consideration, under the regulations of the Department of Banking and Insurance, in the determination of the company's true policyholders' surplus. The characterization, "non-admitted," will not influence our determination as to their true value. These items are as follows:

3. *Advances to Laicremmoc Realty Co.—$36,862.43.*

The *Laicremmoc Realty Co.* is a holding company, all the stock of which is owned by petitioner. The proof was to the effect that the sole function of this corporation was to purchase in realty at foreclosure sales for petitioner, and hold title thereto. The advances now in question were made to meet temporary expenses in connection with the upkeep of these properties and were charged off, as constituting an expense account, at the end of 1937. We are satisfied that there was no value to petitioner in this item as of the assessing date, it being neither contemplated nor feasible for Laicremmoc Realty Co. to repay it.

4. *Miscellaneous Advances—$463.87.*

This was actually a suspended expense item, classified as a "non-admitted asset" purely for bookkeeping convenience. It had no value.

5. *Dormant Premium Balances—$75,960.20.*

This item is constituted by certain troublesome accounts receivable which have been dormant for some time, in some instances, years. Much of this has been written off since the assessing date, and very little collected. We agree with petitioner's witness who estimated the account as having a value of only twenty-five per cent. of face, and will allow a deduction of the balance of $56,970.15, in estimating its true value.

6. *Accounts receivable from companies in liquidation—$33,930.39.*

As of October 1st, 1937, there was due to petitioner from companies in liquidation the amount indicated. Petitioner contends the item was absolutely valueless and that it should be deducted *in toto* for purposes of arriving at true value.

We cannot subscribe to this view. It was proven that only fifty per cent. of this item had been written off by the petitioner on its books on September 30th, 1939, two years subsequent to the assessing date in question. Within the principles enunciated by the Supreme Court in the Second National Bank and General Motors Corp. cases, cited *supra,* we believe that the true value of this item cannot be fairly appraised, as of October 1st, 1937, at less than twenty-five per cent. of its face amount, or $8,482.60. A deduction of the balance of $25,447.79 will be allowed in determining the true value of the gross accounts receivable.

7. *Advances to Agents—$5,297.13.*

This item represents advances against future commissions to agents. We are unable to agree with petitioner's claim that this item was valueless. In the absence of proof to the contrary, it would appear that the petitioner could expect to recoup these moneys in full against future commissions earned by these agents. No deduction will be allowed in reference thereto.

8. *Accounts receivable, Southwestern Dep't—$11,566.79.*

This represents ninety-day overdue accounts from one of the departments of the company. We see no reason to reject the estimate of petitioner's witness that this item had a value of only twenty-five per cent. or $2,891.69. There will be allowed a deduction from receivables on account thereof in the sum of $8,675.10.

9. *Balance due from New Jersey Fidelity and Plate Glass Insurance Co.—$7,372.22.*

This debtor was in receivership on the assessing date. We are satisfied to accept the estimate of petitioner's witness that the account was only fifty per cent. recoverable and a deduction of $3,686.05 will be allowed in estimating its true value.

10. *Premiums on combination policies—$2,387.17.*

This item appears to have had no value to petitioner, since the premiums referred to represented that part of the total premiums on combination policies which was due to another fire insurance company, and in respect of which petitioner

was merely acting as collecting agent. A deduction will be allowed for the full amount thereof.

11. *Mortgage guaranty advances—$16,132.62.*

This item was in no sense an asset, but the total expended by petitioner in payments on mortgage guaranties arising out of reinsurance contracts. It should be deducted in full.

12. *Loss on Terry contract—$10,869.62.*

Petitioner was a reinsurer of part of the bond on the contract named, and the collateral held for the petitioner's proportion of the loss is short of the loss by the amount stated. The item had no asset value whatever and should be deducted.

13. *Suspense items—$1,206.71.*

This consists of the amount of miscellaneous claim drafts which have been issued and held in suspense until properly charged off to their respective claim files. It was likewise of no asset value.

Recapitulating the items with respect to which petitioner is entitled to deduction from the $1,613,540.03 of gross assets under discussion, in order to arrive at the true value thereof, shows the following:

Disputed assets $1,613,540.03, reduced by

| Item | Amount |
|------|--------|
| 1. | $237,961.44 |
| 2. | 50,500.00 |
| 3. | 36,862.43 |
| 4. | 463.87 |
| 5. | 56,970.15 |
| 6. | 25,447.79 |
| 8. | 8,675.10 |
| 9. | 3,686.05 |
| 10. | 2,387.17 |
| 11. | 16,132.62 |
| 12. | 10,869.62 |
| 13. | 1,206.71 |
| Total | $451,162.95 |

Leaves

| | | |
|---|---|---|
| | $1,162,377.08 | True value disputed assets |
| | 7,631,195.11 | Agreed amount of other assets |
| Total | $8,793,572.19 | Gross assets, true value |
| | 8,077,126.95 | Agreed total deductibles |
| | $716,445.24 | Adjusted taxable estate |

In accordance with these calculations the assessment will be reduced to the sum of $716,445.24.